UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| STEPHEN R. ALEXANDER, ET AL | : | CIVIL ACTION NO. |
|     Plaintiffs | : | 3-04-cv-280 (CFD) |
| | : | |
| v. | : | **MEMBER CASES**: |
| | : | 3-04-cv-355 (CFD) |
| ALLIANZ DRESDNER ASSET | : | 3-04-cv-683 (CFD) |
| MGMT. OF AMER. HOLDING, | : | 3-04-cv-839 (CFD) |
| INC., ET AL | : | |
|     Defendants | : | |

## RULING ON MOTIONS TO DISMISS

The plaintiffs bring this action under the Investment Company Act of 1940, 15 U.S.C. § 80a-1 et seq. (the "ICA"), and under state common law for unjust enrichment and for breach of fiduciary duty.[1] The plaintiffs bring these claims against nominal defendants, Fifty-four different PIMCO funds, and against Allianz Dresdner Asset Management of America L.P. (ADAM of America), its subsidiary PIMCO Advisors Fund Management LLC, Allianz of America Inc., and Allianz Dresdner Asset Management of America Holding Inc. (ADAM Holding). The plaintiffs also bring these claims against PIMCO Advisors Fund Management LLC ("PIMCO Advisors"), PIMCO Equity Advisors LLC ("PEA"), Cadence Capital Management LLC ("CCM"), NFJ Investment Group L.P. (NJF), Nicholas-Applegate Capital Management LLC (NACM), Pacific Investment Management Company LLC ("PIMCO"), and RCM Capital Management LLC (RCM) (collectively, the "Investment Adviser Defendants"), and against PA Distributors LLC, John Doe defendants, and the trustees of the PIMCO Funds.

---

[1] Count Six of the Consolidated Amended Complaint is a claim brought under the Connecticut Unfair Trade Practices Act, Conn. Gen. Stat. § 42-110a et seq. (CUTPA). However, the plaintiffs have withdrawn this claim.

The plaintiffs seek to bring these claims as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3), on behalf of a class consisting of all persons or entities who held shares, units, or like interests in any of the Funds between February 4, 1999, and November 17, 2003, inclusive (the "class period"), and who were allegedly damaged thereby. No class has yet been certified.

The plaintiffs also bring a derivative claim against the Investment Adviser Defendants on behalf of the PIMCO Funds for violation of the Investment Advisers Act of 1940, 15 U.S.C. § 80b-1 et seq. (the "IAA").

The defendants move to dismiss all claims pursuant to Federal Rules of Civil Procedure 12(b)(6).

I.   Background

The plaintiffs allege that the defendants used assets from the PIMCO funds to acquire "shelf-space" at brokerage firms, i.e., that they paid excessive commissions to brokers to promote the sale of fund shares to investors. These arrangements included: (1) sending fund brokerage business to brokers in exchange for agreements to promote the funds in return ("directed brokerage"), (2) cash payments to brokers who agreed to promote the funds ("revenue sharing"), and (3) excessive commission arrangements with brokers ("soft dollar"). The plaintiffs further allege that the defendants failed to adequately disclose these payments to investors.[2]

According to the complaint, the Investment Advisors and Distributors were motivated to

---

[2] On November 17, 2003, the Securities and Exchange Commission (SEC) and the National Association of Securities Dealers (NASD) fined and censured Morgan Stanley, one of the brokers that allegedly had a shelf-space agreement with the PIMCO funds, for failing to adequately disclose incentive payments it received.

make shelf-space payments because their own fees were calculated as a percentage of assets under management. Hence the more money invested in the funds, the greater the fees paid to the Investment Advisors and Distributors. The plaintiffs claim that, conversely, fund investors did not enjoy any economies of scale as a result of the larger fund sizes.

The Consolidated Amended Complaint alleges ten causes of action: (1) against the Investment Advisor and Trustee defendants for making misrepresentations and omissions of material fact in registration statements and other documents disseminated pursuant to the ICA, in violation of ICA § 34(b); (2) against the Distributor defendant, the Investment Advisor defendants, and the trustee defendants for breach of their fiduciary duties under ICA § 36(a); (3) against the Distributor defendant, the Investment Advisor defendants, and the trustee defendants for breach of their fiduciary duties under ICA § 36(b); (4) against ADAM of America for causing the Distributor defendant and the Investment Advisor defendants to violate the ICA as set forth above, in violation of ICA § 48(a) (control person liability); (5) a derivative claim against the Investment Adviser Defendants on behalf of the PIMCO Funds for violation of the IAA by making the shelf-space payments and failing to disclose them adequately; (6) against all defendants for breach of the Connecticut Unfair Trade Practices Act ("CUTPA")[3]; (7) against the Investment Advisor defendants for breach of fiduciary duty; (8) against the Trustee defendants for breach of fiduciary duty; (9) against all defendants for aiding and abetting a breach of fiduciary duty; (10) against all defendants for unjust enrichment. The last four claims were brought under the common law.

---

[3] This claim has been withdrawn.

II.    Motion to Dismiss Standard

When considering a Rule 12(b) motion to dismiss, the court accepts as true all factual allegations in the complaint and draws inferences from these allegations in the light most favorable to the plaintiff.  See Scheuer v. Rhodes, 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974) overruled on other grounds by Davis v. Scherer, 468 U.S. 183 (1984); Grandon v. Merrill Lynch & Co., Inc., 147 F.3d 184, 188 (2d Cir. 1998).  "Dismissal is inappropriate unless it appears beyond doubt that the plaintiff can prove no set of facts which would entitle him or her to relief."  Sweet v. Sheahan, 235 F.3d 80, 83 (2d Cir. 2000).   See also  Davis v. Monroe County Bd. of Educ., 526 U.S. 629, 654, 119 S.Ct. 1661, 143 L.Ed.2d 839 (1999). " 'The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims.' " York v. Ass'n of the Bar, 286 F.3d 122, 125 (2d Cir. 2002) (quoting Scheuer, 416 U.S. at 236, 94 S.Ct. 1683), cert. denied, 537 U.S. 1089, 123 S.Ct. 702, 154 L.Ed.2d 633 (2002).  However, "conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss" from being granted.  Smith v. Local 819 I.B.T. Pension Plan, 291 F.3d 236, 240 (2d Cir. 2002) (internal quotation marks omitted).

III.    Discussion

    A.    ICA Claims: Counts One through Four

The defendants argue that Counts One, Two, and Four must be dismissed because there is no private rights of action under ICA §§ 34(b),[4] 36(a),[5] or 48(a).[6]  In Bellikoff v. Eaton Vance

---

[4] Section 34(b) of the ICA prohibits making untrue or misleading statements of a material fact in any registration statement, application, report, account, record, or other document required

Corp., 481 F.3d 110, 114 (2d Cir. 2007) (per curium), the United States Court of Appeals for the Second Circuit held that there was no private right of action under these subsections. Accordingly, Counts One, Two, and Four are dismissed.

The defendants argue that Count Three, which alleges violation of ICA § 36(b), should be dismissed for failure to state a claim because the plaintiffs failed to adequately allege excessive fees.  ICA § 36(b) creates "a fiduciary duty with respect to compensation for services, or of payments of a material nature." 15 U.S.C. § 80a-35(b).[7]  The plaintiffs allege that the defendants violated this fiduciary duty "by improperly charging investors in the Funds purported Rule 12b-1 marketing fees" and by "improperly inflat[ing] management fees . . . [by] shift[ing] expenses from the Investment Advisers to the Funds investors without a corresponding reduction in their management fees."

An advisory fee violates § 36(b) if it "is so disproportionately large that it bears no reasonable relationship to the services rendered and could not have been the product of arm's-length bargaining." Gartenberg v. Merrill Lynch Asset Mgmt., Inc., 694 F.2d 923, 928 (2d Cir. 1982).  "To make this determination, the Court should consider all pertinent facts, including:

---

by the ICA.  15 U.S.C.A. § 80a-33(b).

[5] Section 36(a) of the ICA authorizes the SEC to bring an action alleging breach of fiduciary duty involving personal misconduct in respect of any registered investment company. 15 U.S.C.A. § 80a-35(a).

[6] Section 48(a) of the ICA prohibits "any person, directly or indirectly, to cause to be done any act or thing through or by means of any other person which it would be unlawful for such person to do under the provisions of this subchapter or any rule, regulation, or order thereunder." 15 U.S.C.A. § 80a-47(a).

[7] ICA § 36(b) also explicitly creates a private right of action for violation of this fiduciary duty.

(1) the nature and quality of the services provided by the advisers to the shareholders; (2) the profitability of the mutual fund to the adviser-manager; (3) "fall-out" benefits; (4) the economies of scale achieved by the mutual fund and whether such savings were passed on to the shareholders; (5) comparative fee structures with other similar funds; and (6) the independence and conscientiousness of the mutual fund's outside trustees." In re Eaton Vance Mut. Funds Fee Litigation, 380 F. Supp.2d 222, 237 (S.D.N.Y. 2005) aff'd Eaton Vance Corp., 481 F.3d 110 (citing Gartenberg, 694 F.2d at 929-30).

Here, the plaintiffs do not allege that the compensation paid to the defendants was disproportionate to the services rendered. Instead, Count Three alleges only that the defendants used fees for an improper purpose. The plaintiffs maintain that the fees must have been excessive if they generated sufficient revenue for the defendants to divert a portion of it to these improper purposes.[8] However, "[i]n order to state a claim under § 36(b), one must allege excessive fees, rather than fees that might simply be described as 'improper.'" Eaton Vance Corp., 481 F.3d at 118 (emphasis added) (holding that allegations that defendants authorized improper 12b-1 fees, soft dollar payments, and excessive commissions to brokers are insufficient to state a claim under 36(b)).[9] See also In re Evergreen Mut. Funds Fee Litigation, 423 F. Supp.2d 249, 259 (S.D.N.Y. 2006) (finding that allegations substantially similar to those at issue

---

[8] At the hearing on the motion to dismiss, the plaintiffs argued that the defendants "obviously structured the management fee contract so that they're making enough money to be able to take huge chunks of it and pay the brokers to push the shares." The plaintiffs further argued that since economies of scale were not passed on, fees directed to promoting investment in the mutual funds provided no "services" to the investors.

[9] At oral argument, the plaintiffs did not attempt to distinguish the allegations in this case from Eaton Vance. Instead the plaintiffs argued that Eaton Vance, which has since been affirmed on appeal by the Second Circuit, was wrongly decided.

here failed to state a claim under 36(b)); In Re Goldman Sachs Mutual Funds Fee Litigation, No. 04 Civ. 2567(NRB), 2006 WL 126772, at *10 (S.D.N.Y. Jan 17, 2006) (same); In re Salomon Smith Barney Mut. Fund Fees Litigation, 441 F. Supp.2d 579, 603 (S.D.N.Y. 2006) (noting that majority of courts in the Southern District of New York had held that "improper usage of fees charged . . . falls outside of § 36(b) so long as the total amount charged in and of itself is not outsized"). Because the plaintiffs do not allege specific facts that would provide a factual basis for finding that fees were "so disproportionately large" that they bore "no reasonable relationship to the services rendered and could not have been the product of arm's-length bargaining," the plaintiffs have failed to state a claim under 36(b) and Count Three is dismissed. See Gartenberg, 694 F.2d at 928; Eaton Vance Corp., 481 F.3d at 118.

    B.    IAA Derivative Claim: Count Five

The defendants argue that Count Five should be dismissed because the plaintiffs have failed to comply with Rule 23.1 of the Federal Rules of Civil Procedure ("Rule 23.1"). Count Five is a derivative claim on behalf of the PIMCO Funds against the Investment Advisor Defendants under § 215 of the IAA for violations of § 206 of the IAA. It seeks to rescind the investment advisory contracts with the Investment Adviser Defendants and to recover past fees paid. The plaintiffs concede that this claim must be brought derivatively, and that they did not make a demand. However, they argue that they adequately pled that a demand would be futile.

Rule 23.1 requires that the complaint in a derivative suit "allege with particularity. . . the reasons . . for not making the effort [to obtain the desired action from the board of directors or comparable authority]." Fed. R. Civ. P. 23.1. The demand requirements for a derivative suit are determined by the law of the state of incorporation. See Kamen v. Kemper Fin. Servs., Inc., 500

U.S. 90, 98-101, 111 S.Ct. 1711, 114 L.Ed.2d 152 (1991).

The PIMCO funds are part of two business trusts: the "PIMCO funds: Multi-Manager Series Trust" (MMS Trust); and the Pacific Investment Management Series (PIMS Trust). Both trusts are registered investment companies organized as Massachusetts business trusts. Accordingly, the Court must apply Massachusetts law to determine whether the plaintiffs have adequately plead demand futility.

Under Massachusetts law, before filing a derivative action on behalf of a corporation, a plaintiff "must establish that . . . all available means to obtain relief through the corporation itself are exhausted by making demand on the corporation's board of directors to prosecute the litigation." See Harhen v. Brown, 431 Mass. 838, 730 N.E.2d 859, 865 (2000) (internal quotation marks omitted). A plaintiff may seek to have the demand requirement excused as futile "if a majority of directors are alleged to have participated in wrongdoing, or are otherwise interested." Id.

Under Massachusetts law, "[a] trustee of a trust who with respect to the trust is not an interested person, as defined in [the ICA] shall be deemed to be independent and disinterested when making any determination or taking any action as a trustee." Mass Gen. Laws ch. 182, § 2B; see also In re Eaton Vance Mut. Funds Fee Litigation, 380 F.Supp.2d at 239 (applying Mass. Gen. Laws ch. 182, § 2B to determine if demand was excused in derivative case brought on behalf of mutual funds). The ICA provides, in relevant part, that a trustee is an interested person if the trustee is an "affiliated person"-that is, if the trustee is "controlled by" by the investment adviser. See 15 U.S.C. § 80a-2(a)(3), (19). The ICA defines "control" as "the power to exercise a controlling influence over the management or policies of a company, unless such power is solely

the result of an official position with such company," and provides that, "[a] natural person shall be presumed not to be a controlled person within the meaning of this subchapter." See 15 U.S.C. § 80a-2(a)(9).

The plaintiffs allege that the trustees are interested because each of the trustees was appointed by the Investment Adviser Defendants and is therefore "beholden to the Investment Adviser Defendants for his or her position and substantial compensation as a Director." According to the Consolidated Amended Complaint, the Investment Adviser Defendants recruited trustees from the ranks of other investment advisor companies, and paid them excessive salaries for their service. The plaintiffs further allege that, "[b]ecause of their lack of independence from the Investment Adviser Defendants, Trustee Defendants wrongfully approved the adviser fees, 12b-1 fees, Soft Dollars and the materially misleading disclosures in the Funds' Prospectuses in each of the years they served as Directors." The plaintiffs also allege that the trustees are incapable of making an independent decision with regard to whether to bring this derivative claim because "the Trustee Defendants would be required to sue themselves and their fellow Directors with whom they have had close business relationships for nearly 20 years."

As set forth in In re Eaton Vance Mut. Funds Fee Litigation, 380 F. Supp.2d at 239-240, which considered substantially identical allegations of demand futility, these allegations are insufficient to excuse the demand requirement under Massachusetts law:

> The fact that a defendant appointed a board member is insufficient to establish that the board member is interested, even if the position provides the board member with compensation. See Demoulas v. Demoulas Super Markets, Inc., No. 033741BLS, 2004 WL 1895052, at *15 (Mass. Super., Aug.2, 2004)). Moreover, the threat of personal liability for approving a transaction and the possibility of being sued individually is insufficient to demonstrate that a board is interested for the purposes of excusing the demand requirement. See Heit v. Baird, 567 F.2d 1157, 1162 (1st

Cir.1977); In re Kauffman Mut. Fund Actions, 479 F.2d 257, 265 (1st Cir.1973) ("Where mere approval of the corporate action, absent self-interest or other indication of bias, is the sole basis for establishing the directors' 'wrongdoing' and hence for excusing demand on them, plaintiff's suit should ordinarily be dismissed."); ING Principal Protection Funds Derivative Litigation, 369 F. Supp.2d 163, 171-72 (D. Mass 2005).

Finally, the plaintiffs argue that the trustees, who frequently oversaw numerous individual funds, were so overburdened that they could do no more than "rubber-stamp" the Investment Advisor Defendants decisions. However, service on multiple boards is common practice and not a basis for finding a trustee "interested." See, e.g., Krantz v. Prudential Investments Fund Management LLC, 305 F.3d 140, 143-144 (3d Cir. 2002).

Because the plaintiffs have failed to plead with particularity facts sufficient to excuse a demand, Count Five is dismissed.

    C.    State Law Claims

The defendants argue that the plaintiffs' state law claims are preempted by the Securities Litigation Uniform Standards Act, 15 U.S.C. §§ 77p(b), 78bb(f)(1) ("SLUSA"). SLUSA provides that a state law claim must be dismissed as completely preempted if: 1) the lawsuit is a "covered class action"; 2) the claim is based upon state law; 3) the claim concerns a "covered security"; and 4) the plaintiff alleges either a misrepresentation or omission of a material fact or a manipulative or deceptive device or contrivance that is "in connection with the purchase or sale of a covered security." 15 U.S.C. §§ 77p(b), 78bb(f)(1). The plaintiffs argue that SLUSA does not apply because their claims have not been brought "in connection with the purchase or sale of a covered security." Instead, the plaintiffs maintain they have brought claims as holders of a security. However, the Supreme Court has since held that "SLUSA pre-empts state-law holder

class-action claims." Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Dabit, 547 U.S. 71, 87, 126 S.Ct. 1503, 1514 (2006) (rejecting Second Circuit's narrower interpretation of "in connection with the purchase or sale" and holding that "the identity of the plaintiffs does not determine whether the complaint alleges fraud 'in connection with the purchase or sale' of securities"). Accordingly, Counts Seven, Eight, Nine and Ten are preempted by SLUSA and dismissed.

IV.     Conclusion

For the above reasons, the Defendants' Motions to Dismiss [Doc. No.'s 108, 111, 113, 115] are GRANTED.

SO ORDERED this   18th    day of September 2007 at Hartford, Connecticut.

                                            /s/ Christopher F. Droney
                                            **CHRISTOPHER F. DRONEY**
                                            **UNITED STATES DISTRICT JUDGE**